AXELBERG, Appellant, vs. BAYFIELD COUNTY, Respondent.

*January 15—February 13, 1940.*

534

The cause was submitted for the appellant on the brief of *Walsh & Morris* and *William F. Morris*, all of Washburn, and for the respondent on the brief of *W. T. Norlin* of Washburn.

WICKHEM, J.   Plaintiff was elected county judge of Bayfield county in January, 1914.   He was re-elected in 1919, 1925, 1931, and 1937.   At its annual meeting in 1912, the following resolution was enacted by the county board. of Bayfield county :

"Be it resolved by the county board of Bayfield county in regular annual meeting assembled, at the courthouse in the city of Washburn, this 12th day of November, A. D. 1912, that the salary of the county judge of said county be and the same is hereby fixed at the sum of fifteen hundred dollars per annum, payable in regular monthly instalments at the same time and in the same manner as the salaries of other county officers are paid."

On November 14, 1929, the following resolution was adopted :

"Be it resolved by the county board of Bayfield county in annual session assembled that the salary of the juvenile judge of Bayfield county be and the same is fixed at $600 per annum, same to be paid in monthly instalments the same as

other salaries to county officers are paid, it being understood and agreed that such salary shall be in lieu of all fees payable to the juvenile judge as well as the county judge and that all fees collected for certified copies shall be paid over to the county treasurer for the use of the county, this resolution to take effect on December 1, 1929."

On November 14, 1933, a resolution was adopted reducing the salary of the juvenile judge to $300 per annum. Plaintiff was both county and juvenile judge. Following the resolution of November 14, 1929, plaintiff turned in to the county treasurer all fees referred to in the resolution of that date up to and including December 31, 1934. After the resolution reducing his salary went into effect, plaintiff claimed the fees withheld by the 1929 resolution. The total amount of such fees up to the time of the action was $814, of which $294.40 had been retained by plaintiff.

Plaintiff's claim is that the resolution of November 14, 1929, was not effective to deprive the county judge of fees for the years 1934, 1935, 1936, and 1937. This raises three issues. The first is whether the resolution is void as an attempt to change the compensation of the county judge during the term for which he was elected contrary to the provisions of sec. 59.15 (5), Stats. 1929, which provided:

"The county board may at any time change the compensation of any county officer from fees collected and retained by him to a salary, and may fix the annual salary of such officer. However, if such change is made after election or appointment of the officer, the board and such officer shall stipulate in writing the amount of compensation which shall be received and accepted annually by such officer for the remainder of his term as equivalent to the fees or fees and salary to which he was theretofore entitled. The county board of any county wherein such change has been made may at any time change the compensation of any such officer from a salary to fees collected or to part salary and part fees collected; but no change of compensation shall be made during the term for which any such officer was elected or appointed except as provided in this subsection."

The resolution was by its terms effective as of December 1, 1929. The term of plaintiff did not end until January, 1932. The resolution was effective to establish the salary of juvenile judge who has no term, but, except by such a stipulation as is prescribed by sec. 59.15 (5), Stats., could not affect the salary of the county judge until the beginning of his next term. Whether such a stipulation was ever executed the record does not disclose. Assuming that it was not, this would not render the resolution void in so far as it affected the compensation of the county judge. It was merely ineffective until 1932. This case involves fees for the year 1934 and the three following years. Hence, we think that the contention has no materiality here.

The next question is whether the county board was without power on November 14, 1929, to adopt a resolution affecting the compensation of the county judge for the reason that this meeting was not the annual meeting for the year next preceding the election of the county judge of Bayfield county. Sec. 59.15 (1), Stats., in force in 1929, provided as follows:

"The county board at its annual meeting shall fix the annual salary for each county officer, including county judge, to be elected during the ensuing year and who will be entitled to receive a salary payable out of the county treasury. The salary so fixed shall not be increased or diminished during the officer's term, and shall be in lieu of all fees, per diem and compensation for services rendered. . . ."

The election for county judge was not to occur until the spring of 1931. Hence, he was not "to be elected during the ensuing year." The question is presented whether the resolution in question was so prematurely adopted as to be wholly ineffective. We think not. In *Hull v. Winnebago County*, 54 Wis. 291, 293, 11 N. W. 486, relied on by plaintiff, plaintiff was elected county treasurer in 1878 and entered upon his duties in January following. The annual salary of his immediate predecessor was $1,400. The annual

session of the county board began November 14, 1877, and was continued until the 28th of that month when it was adjourned to January 8, 1878. At that session it was again adjourned to March 12, 1878, and at that meeting the salary of the county treasurer was fixed at $1,100. The question was whether the county board at the adjourned session in March, 1878, had power to fix the salary of an officer who was to be elected in November of the same year. The statute dealt with is substantially the same as the one involved here. The court held that the plaintiff's salary was as fixed by the board in March. The court met the contention here made with the following statement:

"That intent obviously was to give the county boards the power to determine the amount of salaries of county officers. It is quite clear that the statute contemplates that the power shall be exercised at a period remote from the time when such officers were to be chosen, in order to prevent the influence of partisan bias or personal feeling on the part of members of the board in fixing the salary. And, furthermore, it was probably deemed desirable that candidates for office should know precisely what compensation was attached to the office." See also *State ex rel. Banks v. McClure,* 91 Wis. 313, 64 N. W. 992.

It will be noticed that in the *Hull Case, supra,* the board was tardy in fixing the salary, and that the validity of its resolution was nevertheless recognized by this court largely because the meeting at which the salary was fixed was sufficiently remote from the time of election so that the officer involved had a full understanding of what his salary would be. Tardiness in fixing salaries is the vice aimed at by the statute, the purpose being to avoid partisan bias and personal feeling, and to give to prospective candidates seasonable knowledge of the amount of compensation. The resolution does not by reason of prematurity so offend against the statute as to be invalid. We think this assignment of error has no merit.

The next question is whether, assuming its timely enactment, the resolution had the effect of abolishing the fees of the county judge and limiting plaintiff as judge to the salary fixed in 1912 as compensation for the office. At the time when this resolution was enacted, sec. 253.15 (2), Stats. 1929, read as follows:

"The judge of any county court where no other provision is made by law shall be entitled to receive five dollars per day, to be paid from the county treasury, for each day he shall be actually engaged in the examination of any person upon a criminal charge, or engaged upon any other matter, not appertaining to probate business, compensation for which is not otherwise provided."

Plaintiff contends that if the statute means what it says, the county judge was entitled to charge for examinations of persons seeking admission to the state general hospital or other public institutions. The first answer to this is that the resolution of November 14, 1929, did make other provisions in lieu of fees. It fixed $600 per year as plaintiff's salary as juvenile judge in addition to the $1,500 per annum theretofore fixed as the salary of the county judge. It was expressly provided that this salary was to be in lieu of all fees payable either to the juvenile judge or county judge. This literally takes the case out of the operation of sec. 253.15 (2), Stats.

Plaintiff contends, however, that the county board could not substitute the salary of a juvenile judge for the fees of a county judge, and points out that these two offices are not necessarily held by the same person. The point loses its force because of the fact that plaintiff was actually serving as juvenile judge, and it is to be doubted, if the contention were true, whether the validity of the salary provision itself could be sustained. Further, since the resolution clearly contemplates that the county judge is not to retain any fees, and since the salary of the county judge had already been fixed at

$1,500 a year, it seems to us that plaintiff's contention does not improve his position. It was competent for the county board to substitute for the fees a salary already fixed for the office of county judge, and we have no doubt that it was the intention of the resolution that the combined salaries of county judge and juvenile judge should be the sole compensation for all services connected with both offices. A holding that the salary of a juvenile judge could not as a matter of law be substituted for the fees of a county judge would not leave the situation unprovided for. The existing salary of the county judge would constitute both the substitute and the provision for compensation referred to by the statute.

*By the Court.*—Judgment affirmed.