ESCOBEDO v. OKLAHOMA DEPT. OF PUBLIC SAFETY



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:ESCOBEDO v. OKLAHOMA DEPT. OF PUBLIC SAFETY

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 ESCOBEDO v. OKLAHOMA DEPT. OF PUBLIC SAFETY
2021 OK CIV APP 2
482 P.3d 22
Case Number: 118588
Decided: 12/08/2020
Mandate Issued: 01/13/2021
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2021 OK CIV APP 2, 482 P.3d 22

 

TALIA ESCOBEDO, a/k/a TALIA ESCOBAR, Plaintiff/Appellant,
v.
OKLAHOMA DEPARTMENT OF PUBLIC SAFETY, Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE THOMAS PRINCE, TRIAL JUDGE

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS 
CONSISTENT WITH THIS OPINION

Javier Hernandez, DUNN & HERNANDEZ, Oklahoma City, Oklahoma, for Plaintiff/Appellant

Christa Alderman, Patricia S. Phillips, OKLAHOMA DEPARTMENT OF PUBLIC SAFETY, LEGAL DIVISION, Oklahoma City, Oklahoma, for Defendant/Appellee

P. THOMAS THORNBRUGH, PRESIDING JUDGE:

¶1 Talia Escobar appeals the dismissal of her petition for declaratory judgment regarding the refusal of the Department of Public Safety to issue her a state identification (ID) card. On review we find this matter was not suitable for dismissal, and remand with instructions.

BACKGROUND

¶2 Appellant Talia Escobar filed an action for declaratory judgment after the Department of Public Safety (DPS) refused to issue her an "Oklahoma Identification card" on the grounds that the documentation she presented--a California birth certificate and a motor vehicle title--were legally insufficient, and she was required to provide a Social Security number (sometimes "SSN").
Ms. Escobar states that she is currently ineligible for a SSN.[1] DPS filed two motions to dismiss, the second of which the court granted with prejudice on the grounds that no state ID card was available without a SSN. Ms. Escobar now appeals.

STANDARD OF REVIEW

¶3 The district court granted DPS's motion to dismiss. A motion to dismiss is generally viewed with disfavor, and the standard of review before this Court is de novo. Ladra v. New Dominion, LLC, 2015 OK 53, ¶ 8, 353 P.3d 529 (citations omitted). When evaluating a motion to dismiss, this Court examines only the controlling law, taking as true all of the factual allegations together with all reasonable inferences that can be drawn from them. Id. The party moving for dismissal bears the burden to show the legal insufficiency of the petition. Id. If relief is possible under any set of facts that can be established and are consistent with the allegations, a motion to dismiss should be denied. Miller v. Miller, 1998 OK 24, ¶ 15, 956 P.2d 887.

ANALYSIS

¶4 We first note that DPS argues in its motion to dismiss, filed June 13, 2019, that Ms. Escobar has failed to exhaust her administrative remedies before suing for declaratory judgment. It also argues that it is unable to determine proper venue, or even if Ms. Escobar is "the Plaintiff." The district court ruled, however, on the facts and law, based on the Social Security number issue. It cannot have done so without resolving these jurisdictional issues. We will take this ruling as a denial of DPS's other theories for dismissal, and find no error in that denial.

¶5 According to the current Regulation, O.A.C. 595:10-1-25[2] entitled, "Procedure for obtaining an identification card," there are now two forms of Oklahoma driver's license and ID card: a "Real ID Compliant Identification card" and a "Real ID Non-compliant identification card. Per O.A.C. 595:10-1-25:

When applying for a Real ID Compliant Identification card the applicant shall be required to furnish the same acceptable means of identification and other documents as when applying for a driver license as prescribed in OAC 595:10-1-3(b).

However:

When applying for a Real ID Non-compliant identification card the applicant must provide the same acceptable means of identification as required when applying for a Real ID Non-compliant driver license as prescribed in OAC 595:10-1-3(c).[3]

¶6 The Real ID compliant and Real ID non-compliant cards have different requirements. O.A.C. 595:10-1-3(b) requires a SSN for a Real ID compliant card:

(B) Original or certified copy of a birth certificate filed with a State Office of Vital Statistics or equivalent agency in the individual's State of birth.
And:

(4) Proof of Social Security Number (SSN). An applicant for a REAL ID driver license must present his or her Social Security Administration account number card; or, if a Social Security Administration account card is not available, the person may present any of the following documents bearing the applicant's SSN:

. . . .

¶7 A Social Security number is, therefore, a stated requirement for a "Real ID compliant" card. These regulations appear to be enacted to comply with 49 U.S.C.A. § 30301:

(1) In general. To meet the requirements of this section, a State shall require, at a minimum, presentation and verification of the following information before issuing a driver's license or identification card to a person:

(A) A photo identity document, except that a non-photo identity document is acceptable if it includes both the person's full legal name and date of birth.

(B) Documentation showing the person's date of birth.

(C) Proof of the person's Social Security account number or verification that the person is not eligible for a Social Security account number.

(D) Documentation showing the person's name and address of principal residence.

(Emphasis added.) Ms. Escobar appears have satisfied sections A, B and D, but not C.

¶8 If the states were to make these requirements mandatory for all ID cards and driver's licenses, it would leave the states unable to issue identification cards for state purposes not controlled by the federal government without following these federal requirements. In this case, Oklahoma has preserved its ability to issue a Real ID non-compliant card that cannot be used in areas where the federal government has the power to order the use of Real ID compliant card, but may still function for other state purposes.[4]

¶9 The documentation requirements are less strict for a Real ID non-compliant card. O.A.C. 595:10-1-3(c) requires the following for a Real ID non-compliant card:

(1) Primary proof of identification for original issuance to a United States citizen. The following shall be presented by the applicant as primary proof of identification for a citizen of the United States:

(A) A certified birth certificate, as issued by the appropriate state agency from the state of birth.

(4) Secondary proof of identification. The following shall be presented by the applicant as secondary proof of identification and shall contain the name of the applicant. . . .

Section (4) goes on to list numerous forms of secondary identification, including an "Oklahoma Motor Vehicle Title or Registration" and does not mandate a Social Security number.

¶10 DPS argues that the identity provisions of O.A.C. 595:10-1-3(c), which do not require the presentation of a SSN, are overridden by O.A.C. 595:10-1-3(d), which provides:

(d) Driver license numbers.

(1) Driver license numbers shall be assigned by computer. Use of the applicant's Social Security number as the driver license number is prohibited [47 O.S. § 6-106(B)]; provided, every applicant shall provide the Department with the Social Security number of the applicant [47 O.S. § 6-106(B), 12], which shall be verified before a driver license shall be issued to the applicant. Verification shall be accomplished using the Social Security On-line Verification (SSOLV) system. The Department shall refer any applicant to the Social Security Administration whenever the Social Security number cannot be verified for the applicant. (Emphasis added.)

¶11 An immediate problem in DPS's interpretation arises because O.A.C. 595:10-1-3(d) does not facially apply to ID cards, but only to drivers' licenses. Further, O.A.C. 595:10-1-25, which deals with issuing and numbering of identification cards has a similar section (d) that does not require the collection of a Social Security number:

When applying for a Real ID Non-compliant identification card the applicant must provide the same acceptable means of identification as required when applying for a Real ID Non-compliant driver license as prescribed in OAC 595:10-1-3(c).

(d) An identification card may be issued as prescribed in OAC 595:10-1-10(h) and 10-1-18(g).

(e) Identification card numbers will be assigned by computer. Use of the applicant's Social Security number is prohibited [47 O.S. §§ 6-105(H) and 6-106(B)].

O.A.C. 595:10-1-10(h) and 10-1-18(g) deal with license renewals and are not implicated here. Title 47 O.S. § 6-105(H) states that, "Any person fourteen (14) years of age or older may apply for a restricted Class D license with a motorcycle-only restriction" and its relevance is unknown. Title 47 O.S. § 6-106(B)(12) states:

12. Social Security number.

No person shall request the Department to use the Social Security number of that person as the driver license number. Upon renewal or replacement of any driver license issued after the effective date of this act, the licensee shall advise the Department or the motor license agent if the present driver license number of the licensee is the Social Security number of the licensee. If the driver license number is the Social Security number, the Department or the motor license agent shall change the driver license number to a computer-generated alphanumeric identification.

¶12 Section 6-106(B) does not mandate the collection of a SSN for an ID card. Nor does O.A.C. 595:10-1-25 require a SSN for a Real ID non-compliant card. We therefore find no basis in the regulations for DPS's insistence on a SSN before issuing a Real ID non-compliant card. Further, the requirements argued by DPS appear to make DPS's regulations regarding Real ID non-compliant cards a nullity.

¶13 DPS states in its appellate response that "applicants for either an identification card or a driver license must possess a valid SSN in order to be a qualified applicant . . . ." This argument is so at odds with the plain wording of O.A.C. 595:10-1-25 and O.A.C. 595:10-1-3(c) that we must discuss it. DPS argues that the specific requirements of these regulations are overridden by 47 O.S. § 6-106. First, § 6-106(1) requires that, "Every application for a driver license or identification card shall be made by the applicant upon a form furnished by the Department of Public Safety." DPS argues that, because its form has a space for a SSN, a SSN is mandatory for a Real ID non-compliant card. We reject this argument without further comment.

¶14 DPS next argues that 47 O.S. § 6-105.3 requires that "identification cards shall be issued, renewed, replaced, canceled and denied in the same manner as driver licenses in this state." (Emphasis added). DPS argues that this section overrides the entire structure of O.A.C. 595:10-1-25 and O.A.C. 595:10-1-3(c). Ironically, DPS therefore argues that the plain text of its own regulations, written after 47 O.S. § 6-105.3 was last revised, violates that statute, and must be disregarded. We find it clear that the general statement of 47 O.S. § 6-105.3 is modified by the specific DPS regulations. It appears entirely clear pursuant to these regulations that Ms. Escobar can obtain a Real ID non-compliant card without a Social Security number, but not a Real ID compliant card.

¶15 DPS next argues that the Department has had a "longstanding interpretation" that requires a SSN in order to issue an ID card and that we should defer to this interpretation. This claim is problematic because it is evidenced by nothing beyond the ipse dixit of DPS counsel. This "longstanding interpretation" is cited to W.R. Allison Enterprises, Inc. v. CompSource Oklahoma, 2013 OK 24, ¶ 15, 301 P.3d 407, 412, which mentions neither Social Security numbers, nor drivers' licenses. The case also does not cite Title 47.[5] If this case was intended to show that an agency can have a "longstanding construction and application," it does so successfully. As a demonstration of a "longstanding interpretation" by DPS that requires a SSN in order to issue a license or ID card, it fails. If an agency wishes to invoke deference to a "longstanding interpretation," it should provide some evidence that this interpretation actually existed and was frequently enforced before this case.[6] Further, as the regulations regarding Real ID compliant and non-compliant cards were enacted in 2019, we find no basis for a current "longstanding interpretation."

¶16 DPS also states that O.A.C. 595:10-1-25 and O.A.C 595:10-1-3 require a SSN for the issuance of any form of Oklahoma ID or driver's license. We have outlined the relevant parts of the regulations, and find no such requirement for Real ID non-compliant cards. DPS makes further arguments at various points in the record that we reject, including one that the law prohibiting the use of a SSN as an identifier on an ID card requires the DPS to collect that information. Equally baffling is the Department's implied position that, if it disputes that the proof of identity offered is adequate, or otherwise refuses to issue an ID, the matter is closed and beyond review by the courts.

¶17 DPS appears to argue in the record that the courts cannot compel it to issue an ID card if it refuses to do so. To support this principle, DPS cites to the holding of Andrews v. State ex rel. Dep't of Pub. Safety, 2001 OK CIV APP 150, ¶ 5, 39 P.3d 818, as one that "mandamus is available to compel an official to act and decide, but it cannot direct the official to act and decide a particular way."[7]

¶18 Presumably DPS intended to cite the principle of Matter of B.C., 1988 OK 4, 749 P.2d 542, 544 that:

While we will not by mandamus require a trial court to exercise its discretion in a particular way, we will require the court to exercise it, so as to give the losing party a final order from which it can appeal.

1988 OK 4 ¶ 10. Here, we are already in an appellate posture, deciding a final order. Possibly, DPS was merely attempting to define the available parameters of mandamus, rather than the powers of the courts in general. If DPS intends to argue, however, that it is free to reject any decision of the courts and continue to refuse Ms. Escobar an ID after any final judicial decision that she is entitled to one, we emphatically reject this argument.

¶19 Ms. Escobar's submissions to the trial court shed little more light than DPS's. At no time does she identify whether she seeks a "Real ID compliant" or a "Real ID non-compliant" card. The immediate question before us is whether Ms. Escobar was entitled to an "Oklahoma ID card" at the time her application was decided. However, the result is the same under either the prior or the current regulations. Any ID issued in July 2018 would have been Real ID non-compliant. All Ms. Escobar could have received under the prior regulations was a "Real ID non-compliant" card, which is the same document she is entitled to now.

¶20 Ms. Escobar's submissions indicate that she may not be seeking a Real ID non-compliant card, but challenging the requirement of a SSN for the issuance of a Real ID compliant card as unconstitutional, or challenging the regulatory requirements for issuing a driver's license. However, these matters were not decided in the district court. Further, because the SSN requirement for a "real ID" originates in federal, not state law, 28 U.S.C. § 2403(a) applies, which states:

In any action, suit or proceeding in a court of the United States to which the United States or any agency, officer or employee thereof is not a party, wherein the constitutionality of any Act of Congress affecting the public interest is drawn in question, the court shall certify such fact to the Attorney General, and shall permit the United States to intervene . . . for argument on the question of constitutionality.

We find no notification to the U.S. Attorney General or Oklahoma Attorney General of these constitutional challenges, and therefore cannot address these issues.[8]

CONCLUSION

¶21 Ms. Escobar provided the documents required for a Real ID non-compliant card (but not a Real ID compliant card), without presenting a Social Security number. The record and current regulations clearly show that the documents Ms. Escobar presented were compliant with the requirements of O.A.C 595:10-1-3(c). The dismissal decision of the district court is reversed, and this matter is remanded for further proceedings consistent with this Opinion.

¶22 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

WISEMAN, C.J., and HIXON, J., concur.

FOOTNOTES

[1] In March 2020, a different panel of this court proposed a 60-day stay to afford Ms. Escobar the opportunity to obtain a SSN and reapply to DPS for her ID. Ms. Escobar stated in response that she is currently ineligible for a Social Security number. No stay was granted.

[2] The version of O.A.C. 595:10-1-25 cited and discussed by the parties in the trial court record is not the current version. O.A.C. 595:10-1-25 has been amended at 36 Ok Reg 1012, eff. 7-25-19, to make the distinction between Real ID compliant and Real ID non-compliant cards or licenses. As noted at Volume 36, P. 1012 of the Register, "The changes in 595:10-1-25 update the procedures for obtaining an initial identification card to meet the requirements for REAL ID implementation." The trial court did not indicate that it had considered the newest version in its decision, however. Any opinion on this matter is further complicated because the 2019 amendment changed the numbering of several regulations.

[3] Volume 36, P. 1012 of the Register shows that the original, looser standards of O.A.C. 595:10-1-3(b) that existed prior to the 2019 amendment were renumbered as O.A.C. 595:10-1-3(c), and a new and stricter section which required a Social Security number was created and designated as section (b). Thus, any references to section 3(b) before the 2019 amendment refer to the current section 3(c). This introduces some confusion to the record.

[4] DPS's own website acknowledges this fact: "Oklahoma will allow individuals to choose between a REAL ID driver's license/ID card and a non-compliant driver's license/ID card." See https://www.ok.gov/dps/FAQs/REAL_ID_FAQs.html (accessed June 30, 2020).

[5] In W.R. Allison, the Court held, "We conclude the longstanding construction and application of § 67.1 of Title 85 of the Oklahoma Statutes by the Oklahoma Insurance Department required CompSource to make a pro rata refund of unearned premium only if CompSource initiated the cancellation of a workers' compensation insurance policy." DPS also cites Porter v. Brook, 1908 OK 178, 97 P. 645 for this principle. As Oklahoma did not require drivers' licenses until 1937, and the first Social Security cards were issued in 1936, we deem no further examination of Porter necessary.

[6] If such a requirement of proof is not made, it appears inevitable that all agency decisions can be characterized as "longstanding interpretations" in pleadings.

[7] DPS inexplicably omitted the words "State argues [that]" from the beginning of this quote. The Andrews Court did not adopt this DPS argument. DPS has represented its own (rejected) argument as a holding of this Court.

[8] We also respectfully suggest that such a challenge is better made in federal court, where one less appellate layer must be negotiated on the inevitable journey to the U.S. Supreme Court.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2001 OK CIV APP 150, 39 P.3d 818, 73 OBJ 188, ANDREWS v. STATE ex. rel. DEPT. OF PUBLIC SAFETY
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1988 OK 4, 749 P.2d 542, 59 OBJ 182, B.C., Matter of
Discussed at Length
 1908 OK 178, 97 P. 645, 21 Okla. 885, PORTER v. BROOK
Discussed
 2013 OK 24, 301 P.3d 407, W.R. ALLISON ENTERPRISES, INC. v. COMPSOURCE OKLAHOMA
Discussed
 2015 OK 53, 353 P.3d 529, LADRA v. NEW DOMINION, LLC
Discussed
 1998 OK 24, 956 P.2d 887, 69 OBJ 1172, MILLER v. MILLER
Discussed
Title 47. Motor Vehicles
 Cite
Name
Level

 47 O.S. 6-105, Graduated Class D Licenses - Motorcycle-only Licenses - Farm Vehicle Special Permits - Learner Permit
Discussed
 47 O.S. 6-106, Application for License or Identification Card - Valid, Unexpired Driver License as Proof of Identity
Discussed at Length
 47 O.S. 6-105.3, Identification Cards for Oklahoma Residents
Discussed at Length


 
 








 
 
 
 

 
 




 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA